SCHARFENBERGER ET AL., APPELLEES, *v.* HOVER, APPELLEE; THE POTOMAC INSURANCE CO., APPELLANT.

(No. 8882—Decided April 10, 1961.)

*Mr. Melvin Schaengold,* for appellees.

*Mr. C. Watson Hover,* prosecuting attorney, for defendant-appellee.

*Messrs. McCaslin, Imbus & McCaslin* and *Mr. Clement J. DeMichelis,* for appellant.

HILDEBRANT, J. This cause was submitted to the Court of Common Pleas of Hamilton County upon an agreed stipulation of facts, set forth below. That court held the claim of the clerk of courts for costs incurred in the criminal cases to have priority over the previous valid attachment of the appellant in whose favor judgment was rendered subsequent to the judgment in the criminal cases. The appeal is here upon questions of law.

The agreed stipulation is:

"It is stipulated by and between C. Watson Hover, The Potomac Insurance Company, and Melvin Schaengold, that:

"$1,015.89 was placed in the possession of said C. Watson Hover by the Cincinnati police department, as evidence in an armed robbery charge against Elmer Scharfenberger and Edward C. Sons.

"The Court of Common Pleas of Hamilton County, Ohio, in the criminal actions captioned 'The State of Ohio vs. Elmer Scharfenberger and Edward C. Sons,' numbered 71211, 71212,

71213, 71214 and 71215, found that the following sums of money were found in the possession of Edward C. Sons and Elmer Scharfenberger and ordered, on March 6, 1957, the following amounts confiscated from said fund of money and to be paid over to the following named persons:

| | |
|---|---:|
| Paul Cunningham | $276.00 |
| Lillian Graham | 42.00 |
| Frances Graham | 18.00 |
| Shirley Schroder | 12.00 |
| Betty Sidenstick | .70 |

"The said amounts were accordingly paid to the above named persons, under said order.

"C. Watson Hover now has in his possession the sum of $667.19.

"On September 13, 1956, there was in effect a policy of burglary and robbery insurance, issued by The Potomac Insurance Company, a corporation authorized to issue policies of insurance in the states of Indiana and Ohio, to the Merchants Trucking Corporation, 108 South Penn Street, Indianapolis, Indiana; Robert A. Meeks doing business as Meek's Drug Store, 3460 College Avenue, Indianapolis, Indiana, on September 13, 1956, was an agent for the Merchants Trucking Corporation for the sale of money orders, and on that date said Robert A. Meeks was robbed of monies held for the Merchants Trucking Corporation in the amount of $796.90; that under the terms of its policy of insurance, The Potomac Insurance Company, paid to the Merchants Trucking Corporation the sum of $796.90, thereby being subrogated to any rights of the Merchants Trucking Corporation against the persons committing the aforesaid robbery.

"On October 24, 1956, The Potomac Insurance Company filed a petition against Elmer Scharfenberger and Edward Sons in the Cincinnati Municipal Court No. 646045 for judgment in the amount of $796.90. On October 24, 1956, The Potomac Insurance Company filed an affidavit in attachment in Cincinnati Municipal Court case No. 646045 and pursuant to said affidavit, a notice of attachment was served on C. Watson Hover. On September 9, 1957, after hearing evidence in support of the contentions of The Potomac Insurance Company, the court granted judgment for The Potomac Insurance Company against Elmer Scharfenberger and Edward C. Sons in the amount of $796.90,

On September 21, 1957, an order was issued by the Cincinnati Municipal Court in case No. 646045 on C. Watson Hover to pay into the Cincinnati Municipal Court the sum of $667.19, and on September 25, 1957, said order was returned unsatisfied, C. Watson Hover having refused to deliver said sum under said order of attachment.

"Court costs were ordered by the Court of Common Pleas to be paid by Elmer Scharfenberger and Edward Sons in cases numbered 71211, 71212, 71213, 71214 and 71215, Criminal Division in the sum of five hundred eighty and 13/100 ($580.13) dollars, which order was made as to Elmer Scharfenberger upon his plea of guilty as charged in the above numbered cases on January 17, 1957, and as to Edward C. Sons upon his plea of guilty as charged in the above numbered cases on March 5, 1957; and that an execution numbered 65261 upon the money which is the subject of the present action was returned by the sheriff of Hamilton County as unsatisfied on March 8, 1957, the defendant herein having refused to deliver said sum under said execution by reason of the attachment of the Cincinnati Municipal Court referred to above.

"Melvin Schaengold performed various legal services on behalf of Elmer Scharfenberger and Edward Sons, the reasonable value of said legal services being in the amount of $500."

Upon the subject of attachment this court stated in *Horn* v. *Lamblin*, 106 Ohio App., 215, at pages 216-217:

"We glean from 5 Ohio Jurisprudence (2d), 467 *et seq.*, that, historically, attachment, unknown to the common law, originated as a custom in London aimed at subjecting to a creditor's claim property of a defendant nonresident who could not be served with process. Since the Code of Civil Procedure, attachment is generally regarded as ancillary to a proceeding for the recovery of money, at least where the principal action is in personam. But, it is stated in Section 11, pages 484 and 485 of 5 Ohio Jurisprudence (2d): 'But in an action in rem, one which is aimed at and binds only the property over which the court obtains jurisdiction, the attachment proceeding is the action itself.' In *Pilgrim Distributing Corp.* v. *Galsworthy, Inc.*, 148 Ohio St., 567, 76 N. E. (2d), 382, certified to the Supreme Court by this court, Turner, J., states in the body of the opinion, at page 573:

" 'That an attachment proceeding in an action in personam is a separate or ancillary proceeding is clear. That an attachment proceeding in an action *in rem* is *the* action is also clear.'

"It is settled that an attachment is in the nature of an execution levied on property of a defendant in anticipation of establishment of plaintiff's claim in the action. It binds the property from the time of service and holds it to satisfy the judgment to be obtained. When an order of attachment has been properly issued and executed, a levy by seizure gives rise to a lien at the time the levy is made. *Liebman* v. *Ashbacker*, 36 Ohio St., 94; *Coggshall* v. *Marine Bank Co.*, 63 Ohio St., 88, 57 N. E., 1086. Upon seizure, under an order of attachment, the officer acquires the right to hold and protect the property, but not to sell it. The right to sell must be given by later order. Upon rendition of the judgment, the attachment becomes vitalized, and there is created the right to sell to satisfy the lien of the attachment from the proceeds, with a right of execution for any balance unpaid."

Like "attachment," costs were unknown to the common law and are recoverable only by reason of the statutes.

We point out that the sum of money here the subject of appellant's attachment was not produced by virtue of the criminal actions and, hence, not analogous to cases wherein property is sold at judicial sale.

We find nothing in the statutes relating to costs in criminal cases upon which to base any deviation from general rules.

Appellant's attachment prior in time to the execution for costs in the criminal cases, bound the money taken from the persons of the criminal defendants from the time of its service, and upon being vitalized by the judgment in favor of the attaching creditor entitled that creditor to possession of the fund in this instance the subject of the action itself.

The judgment is reversed and the cause remanded with instructions to enter final judgment for the appellant and pay said sum in the hands of the clerk to said appellant.

*Judgment reversed.*

LONG, P. J., and O'CONNELL, J., concur.